**ALEXANDER, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

No. 01–CV–70051.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 5, 2001.

Michael L. Pitt, Megan Bonanni, Shannon L. Dunn, Pitt, Dowty, Royal Oak, MI, for Yolanda Carr–Calhoun, Darius Reynolds, Kevin Withers.

Raphaell Z. Richmond, Ford Motor Company, Office of the General Counsel, Dearborn, MI, Thomas G. Kienbaum, Kelvin W. Scott, Julia T. Baumhart, Kienbaum, Opperwall, Birmingham, MI, for Ford Motor Company.

**ORDER GRANTING DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF WITHERS INDIVIDUAL CLAIM, AND MOTION TO DISMISS CLASS ALLEGATIONS**

EDMUNDS, District Judge. ·

This matter came before the Court on Defendant's motion for partial summary judgment, Defendant's motion for summary judgment on Plaintiff Withers individual claim, and motion to dismiss class allegations.

For the reasons set forth below, Defendant's motion for partial summary judgment is GRANTED, Defendant's motion for summary judgment on Plaintiff Withers individual claim is GRANTED, and Defendant's motion to dismiss class allegations is GRANTED.

### I. Facts

Plaintiffs in this case are hourly employees of Defendant Ford Motor Company.[1] Plaintiffs claim the Defendant violates the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiffs claim that Defendant's policies and procedures for dealing with employees who are absent without leave ("AWOL") violate the FMLA. Specifically, Plaintiffs allege that Defendant's policies and procedures deny AWOL employees sufficient time to produce medical documentation following the expiration of a medical leave and that Defendant does not notify its employees of their FMLA rights. Plaintiffs have requested injunctive and declaratory relief along with money damages as provided for by the FMLA. The predominate relief sought is injunctive in nature; Plaintiffs seek an order enjoining further violations of the FMLA and reinstating terminated class members.

This opinion addresses three motions: (1) Defendant's motion for partial summary judgment, which seeks a declaration that Ford's FMLA policies and procedures regarding notice, medical certification, and medical re-certification comply with the FMLA; (2) Defendant's motion for summary judgment on Plaintiff Kevin Wither's individual claim; (3) Defendant's motion to dismiss class allegations. All three motions are GRANTED.

---

1. This case was originally filed on November 20, 2000 with three named class representatives: Yolanda Carr–Calhoun, Darius Reynolds and Kevin Withers. Defendant recently settled with Plaintiffs Carr–Calhoun and Reynolds, and they have been voluntarily dismissed from this lawsuit. On July 13, 2001, Plaintiff filed its first amended complaint adding five additional parties and reinstating Plaintiff Withers' case.

Each of the Plaintiffs in this lawsuit was terminated pursuant to a "Five Day Quit Notice" that is set forth under the 1993 collective bargaining agreement entered into between Defendant and the United Auto Workers ("UAW"). This agreement contains long-standing provisions that have been in place well before the 1993 enactment of the FMLA.

The procedure set forth in the collective bargaining agreement works as follows: employees who are absent for any reason and who do not notify Ford Motor Company of the need to be absent are considered AWOL. Under the five day quit procedure, an employee who is AWOL for five consecutive days is sent a "five-day quit" or "notice to report" letter. This letter gives notice that the employees must at least telephone human resources within the ensuing five days, or risk termination.

The five day quit procedure also applies to employees who fail to contact Ford following the conclusion of medical leave; it is this scenario that gives rise to the present lawsuit. If the employee's leave has expired and the employee has neither returned to work nor contacted Ford for at least five days, human resources sends out a Form 817 (which is simply another term for the five day quit notice). This form asks employees to contact Defendant's human resources department within the ensuing five days; the employee need only telephone Defendant's human resources department to fulfill this obligation. Thus, Defendant's five-day quit rule essentially gives that employee 10 working days to simply notify Ford of his or her intentions; Form 817 is not sent until at least five working days have passed since the employee's leave expired without any notification from the employee, and the employee is given five additional working days from the date the Form 817 is mailed to telephone Ford.

Defendant claims that if the employee does contact the Company within these five days, and requests an extension of leave, then human resources sends the employee a new medical certification form (Form 5166) and again sends the notice of FMLA rights. *See* Deposition of Dr. Walter Talamonti, M.D. at

pages 36–37. Only if the employee fails to contact Ford at all (or fails to return the new medical certification within the 15/18–day period as provided by the FMLA) is the employee terminated. *Id.*

Ford's internal procedures instruct that no administrative action can be taken against the employee for failure to provide medical certification until 15 calendar days have passed since Ford's request for medical certification was hand-delivered to the employee or until 18 calendar days have passed if the request was mailed to the employee. *See* Deposition of Dr. Talamonti at pages 67–69; Deposition exhibit 1 pages YC1 1665–1667. It is this additional requirement of contact created by Form 817 that Plaintiff complains violates the FMLA.

Turning to Plaintiff Kevin Withers' individual claim, Defendant bases its argument for summary judgment on the fact that Plaintiff Withers had not worked the requisite 1,250 hours in the twelve months immediately preceding his purported need for leave. According to Plaintiff Withers' time records, he had only worked a total of 1005.25 hours in the twelve months immediately preceding his leave. *See* Defendant's Exhibit A. Further, Defendant claims that Plaintiff Withers did not ask that his medical leave be treated as an FMLA leave. *See* Defendant's Exhibit B at page 101.

## II. Analysis

### A. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the

burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### B. Ford's Motion for Partial Summary Judgment

Defendant Ford Motor Company brings this motion for partial summary judgment solely on the issue of whether its FMLA policies and procedures regarding notice, medical certification, and medical recertification comply with the FMLA and its regulations.

FMLA regulations require an employee needing leave for his or her own serious medical condition to promptly notify the employer of the need for leave. *See* 29 C.F.R. § 825.302 (generally within one or two business days). Upon receipt of such notification, the employer "may require that the employee's leave...be supported by a certification issued by the health care provider of the employee." 29 C.F.R. § 825.305(a). When the need for leave is unforeseeable, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). At the outset it is important to note that the regulations treat 'notice' differently from 'certification.' This distinction becomes crucial to the outcome of the present case, as the amount of time allotted for each under the regulations is different.

The employer may request medical recertifications under a variety of circumstances, including the employee's request for a leave extension. 29 C.F.R. § 825.308(c). As with the initial certification, the employer must allow the employee at least 15 days to furnish the recertification, running from the date of the employer's recertification request. *Id.*

Pursuant to the Department of Labor regulations "it is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a). Moreover, when a leave expires, employers need only allow two days for the employee to request an extension of the leave. *See* 29 C.F.R. § 825.309(c).

Ford's internal policies and procedures require that an employee requesting medical leave receive the appropriate medical certification form (Form 5166). *See* Exhibit E to Ford's FMLA procedures manual. This form expressly provides that it "is the Company's written request for [medical] certification." It further informs the employee that he or she has 15 calendar days within which to return the medical certification or recertification, as the case may be.

■ Regarding the first alleged violation, Defendant asserts that Plaintiff's claim that Ford's five day quit procedure violates the FMLA on its face has no basis in law. Ford's five day quit procedure merely requires a notifying call, and is not invoked until an employee has been absent without explanation for at least five working days. *See* Deposition of Dr. Talamonti at pages 36–37. According to Ford's written policy, a five day quit notice is not generated until the

offending employee has completely failed to contact Ford for at least five work days. *Id.*

In support of its policies, Defendant argues that any employee who fails to report the reason for his absence within two days cannot invoke the protection of the regulation. *See Slaughter v. American Building Maintenance,* 64 F.Supp.2d 319, 329 (S.D.N.Y. 1999)(an employee who failed to provide notice of the need for unforeseeable leave within two days was not entitled to protection under the FMLA); *see also Mollison v. Stein,* 1998 WL 344048, 1998 U.S.App LEXIS 10773 (6th Cir.1998)(unpublished opinion)(failure to provide notice to the employer of the reason for absence precludes an employee from claiming the protection of the statute). The Court concurs with this position.

Plaintiffs argue that they were all terminated pursuant to a "five day quit notice" for inactions on their part that occurred within the fifteen day period allotted under the FMLA for returning a medical certificate or for demonstrating legitimate reasons why they could not submit the certification within fifteen days. An employee is no less absent without leave at the conclusion of a valid FMLA leave than they are during any other point of their employment. Defendant has valid reasons for knowing when and if employees are going to return to work. The Department of Labor regulations only require an employer to allow two days for an employee to request an extension of leave after that employees leave has expired. *See* 29 C.F.R. § 825.309(c). Thus, this Court finds that Ford's requirement that its employees notify the company of their intentions within five days of the conclusion of leave does not violate the FMLA.

Furthermore, Ford's five day quit rule is more generous than the three day quit rules usually negotiated under collective bargaining agreements. *See Gilliam v. United Parcel Service,* 233 F.3d 969 (7th Cir.2000). Such provisions do not violate the FMLA because they require only that the employee notify the employer when he or she needs to be absent. As the *Gilliam* court observed:

An employer may...require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. 29 C.F.R. § 825.302(d). One of those "usual and customary" requirements at UPS is that the employee let her supervisor know, no later than the beginning of the third working day of leave, how much more time will elapse before the employee returns to work...Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employees plans.

233 F.3d at 971–72.

Although indications exist that this procedure may not have been followed properly with respect to the individual Plaintiff's in this case, that is not the issue presented to the Court in the present motion. The Court is only concerned with Defendant's policies as written, and whether those policies comport with the FMLA. If individual Plaintiffs were terminated in violation of the FMLA or in violation of their union rights, this order does nothing to affect their lawsuits or union grievances.

Secondly, Plaintiff claims that Defendant does not provide its employees with adequate notice of their FMLA rights. Ford's policies and procedures, however, expressly require that notification be given to its employees along with the medical certification (or recertification) form.

Pursuant to the regulations, an employer must provide an employee requesting leave "with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). If the leave will be counted against FMLA entitlement, the notice should so state. *See* 29 C.F.R. § 825.301(b)(1)(i). The notice should also include "any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failure to do so." 29 C.F.R. § 825.301(b)(1)(ii). The notice should address any employee rights concerning substitution of paid leave, any requirement that the employee submit to a fitness-for-duty

exam, and the employee's right to restoration to the same or an equivalent job upon return from leave. *See* 29 C.F.R. § 825.301(b)(1)(iii).[2]

Ford's "Family and Medical Leave Act of 1993 (FMLA) Notice" incorporates all of the foregoing provisions. The notice instructs the employee that he or she has 15 days to provide medical certification, and that failure to provide this certification in a timely manner could delay the leave, result in an AWOL classification, jeopardize FMLA rights and/or result in discharge. *See* Deposition of Dr. Talamonti at pages 36–37. The notice also advises that the leave will not be counted against FMLA entitlement if Accident & Sickness coverage is available.[3] The notice also informs employees of both reinstatement rights and fitness-for-duty requirements. Moreover, it is Ford's policy to expressly require that this notice be provided to the employee with the original medical certification form and with every recertification form. *See* Dr. Talamonti Deposition pages 20–21; Talamonti Deposition exhibit 1, pages YC1 1653–1654. If a Plaintiff was not provided with the proper notification of his or her FMLA rights, it was not due to a Ford policy. If such a notification error did occur, it is due to a deviation from policy, and should be addressed accordingly. Again, since this motion only considers Ford's policies as written (as opposed to individual cases), the Court will not concern itself with individual violations.

### C. Ford's Motion for Summary Judgment on Plaintiff Withers' Claim

■ The FMLA only allows eligible employees to request an unpaid leave of absence in order to care for their own or a family member's serious health condition. An "eligible employee" is defined as one who has been employed by the same employer for at least 12 months, and who has worked at least 1,250 hours for that employer during the 12 months immediately preceding the requested leave. 29 U.S.C. § 2611(2)(A).

Plaintiffs admit that Mr. Withers did not work the requisite 1,250 hours to qualify for FMLA coverage. Plaintiffs argue, however, that Defendant is estopped from declaring Plaintiff ineligible based on 29 C.F.R. § 825.110(d) which deems eligible for FMLA protection all employees whose employers fail to timely notify them of their eligibility status. This regulation provides that in the event the employee gives less than two days notice of the need for leave, and the employer has determined that the employee is ineligible for leave under the FMLA, the employer is required to notify the employee of this determination within two business days of receiving the employee's notice. Should the employer fail to timely notify an employee of his or her FMLA eligibility, the employee is thereafter deemed eligible for FMLA protections and the employer is estopped from claiming at a later date that the employee is ineligible. *Id.*

The majority of courts addressing this issue reject Plaintiffs' argument, ruling that this regulatory provision "is invalid because it impermissibly contradicts the clear intent of Congress to restrict the class of employees eligible for the FMLA." *McQuain v. Ebner Furnaces, Inc.,* 55 F.Supp.2d 763, 775 (N.D.Ohio 1999)(quoting *Wolke v. Dreadnought Marine, Inc.,* 954 F.Supp. 1133, 1135 (E.D.Va.1997); *see also Dormeyer v. Comerica Bank—Illinois, Inc.,* 223 F.3d 579, 582 (7th Cir.2000); *Giammarco v. Ford Motor Co.,* Slip Op. at 9–11, No. 99–CV–73156–DT (E.D. Mich. July 7, 2000); *but see Miller v. Defiance Metal Prod., Inc.,* 989 F.Supp. 945, 948 (N.D.Ohio 1997)(holding that 29 C.F.R. § 825.110(d) was not inconsistent with the FMLA because § 2611(2)(B) did not estab-

---

**2.** The regulations also recite requirements that are not at issue in this case; i.e. those involving "key employees" and treatment of health benefit premiums. *See* 29 C.F.R. 825.301(b)(1)(iv),(vi),(viii).

**3.** Accident & Sickness (A & S) coverage was bargained for by the UAW and allows hourly workers to take paid time off, under certain conditions that are not relevant here, without having the time charged against their 12 weeks of FMLA entitlement. In practice, A & S coverage allows hourly employees to reserve their unpaid FMLA leave for the birth or placement of a child, or to care for an ailing family member without worrying about using up their own allotment of for care of their own serious medical condition.

lish requirements about employer notification). This Court concludes that the reasoning of the majority is more persuasive. The regulation at issue effectively alters eligibility requirements by giving the Department of Labor the authority to require an employer to waive the statutory eligibility requirements if the employer does not provide notice of ineligibility within a specified time. Accordingly, the Court rejects Plaintiff Withers' argument that Ford waived FMLA eligibility requirements by not providing notice of Withers' ineligibility within two business days' receipt of Withers' purported notice for FMLA leave. Therefore, the Court GRANTS Defendant's motion for summary judgment on Plaintiff Withers' individual claim.

## D. Ford's Motion to Dismiss Class Allegations

It is the duty of the Court to decide the question of class certification "as soon as practicable" even if the Plaintiff has not moved for certification. *See Senter v. General Motors Corp.*, 532 F.2d 511, 520–521 (6th Cir.1976).

Federal Rule of Civil Procedure 23 [hereinafter FRCP 23] provides in part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(a)-(b).

District courts must conduct a "rigorous analysis" into whether FRCP 23 prerequisites are met before certifying a class. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). A district court has broad discretion in determining whether to certify a class, but it must apply the criteria of FRCP 23 correctly. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

As provided above, FRCP 23(a) contains four prerequisites that must be met before a court may certify a class. These prerequisites are known as the numerosity, commonality, typicality, and adequacy requirements. Once these prerequisites are satisfied, "the

party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

For purposes of the present motion only, the Court will assume that Plaintiffs satisfy the requirements of Rule 23(a). The Court retains serious concerns that Plaintiffs can actually satisfy Rule 23(a), but since the Court finds that the present case fails to fall into any of the Rule 23(b) subcategories, a ruling on Rule 23(a) becomes moot.

### 1. FRCP 23(b)

Even if Plaintiffs complied with all the prerequisites of FRCP 23(a), they have not shown that the proposed class falls within either 23(b)(2) or 23(b)(3), which are the categories that Plaintiffs have argued applicable to this case.

#### a. FRCP 23(b)(2)

FRCP 23(b)(2) applies to cases seeking declaratory or injunctive relief when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." FED. R. CIV. P. 23(b)(2). This rule primarily concerns actions involving equitable relief as well.

Plaintiffs argue. that they are asking the Court to declare Defendant's policies and practices violative of the FMLA, thus enjoining further violations of the FMLA. The Court has now held that Defendant's policies were not violative of the FMLA on their face, thus the applicability of Plaintiff's proposed Rule 23(b)(2) class becomes moot, as this case now concerns itself with allegations of violations of the FMLA as against individual Plaintiffs.

■ Furthermore, Rule 23(b)(2) mandates that injunctive relief must predominate. A large part of Plaintiff's lawsuit seeks recovery of back pay, as provided by the FMLA, for the workers who were terminated. Back pay, for purposes of the FMLA, is neither injunctive nor equitable relief. *See Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 643–44 (6th Cir.1998). Unlike back pay under Title VII, back pay under the FMLA is strictly money damages. *Id.*

As the Fifth Circuit observed in *Allison v. Citgo Petroleum*,

> [B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members. The underlying premise of the (b)(2) class—that its members suffer from a common injury properly addressed by class-wide relief— ***"begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries."*** Thus, as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, thereby making class certification under (b)(2) less appropriate.

151 F.3d 402, 413 (5th Cir.1998) (citations and footnotes omitted and emphasis added)

The procedural safeguards of concern to the *Allison* court include the right to notice and the right to opt out of the class, safeguards that are absent under Rule 23(b)(2). Because these safeguards are not in place to protect against compromising arguably meritorious claims, denial of Rule 23(b)(2) class certification is warranted where monetary relief predominates over any injunctive relief sought; since that is the case here, the Court finds that Rule 23(b)(2) class treatment is inappropriate for this action.

#### b. FRCP 23(b)(3)

FRCP 23(b)(3) requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

■ Class certification under Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any question affecting only individual class members." FED.R.CIV.P. 23(b)(3). The Court agrees with Plaintiffs that com-

mon questions of law are present in this case; each Plaintiff's case concerns provisions of the FMLA and termination following the expiration of a previously qualified FMLA leave.

Nevertheless, the claims in this case are dependant on individualized facts, and class treatment is not appropriate. A few of the individual determinations that would have to be made in each case include: Whether each plaintiff had a "serious health condition" for purposes of the FMLA. *See, e.g., Peterson v. Exide Corp.,* 123 F.Supp.2d 1265 (D.Kan.2000)(bronchitis was not a serious health condition within the meaning of the FMLA), and whether each plaintiff give Ford notice of his or her serious health condition sufficient to invoke FMLA coverage. Even this preliminary issue is complex and individualized, since the notice requirement differs for a foreseeable versus an unforeseeable need for leave, it must be determined if the need for leave was foreseeable. If it was, then the employee must give at least 30 days notice unless such notice is impracticable. *See, e.g.* 29 U.S.C. § 2612(E)(2).

Thus further individualized questions include whether each plaintiff was on an FMLA qualified leave to begin with; if so, when did his or her leave expire. When each plaintiff received Form 817; if the form was received, whether the plaintiff then called Ford to report his or her status, and whether provisional leave in fact granted by Ford after that phone call. These questions are merely representative of the individual factual questions that abound in this case. The Court concludes that Rule 23(b)(3) class action is not appropriate.

### III. Conclusion

For the reasons set forth above, Defendant's motion for partial summary judgment is GRANTED, Defendant's motion for summary judgment on Plaintiff Withers individual claim is GRANTED, and Defendant's motion to dismiss class allegations is GRANTED.